THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATASHA D. EDWARDS, Defendant-Appellant.

Second District   No. 2—97—0976

Opinion filed April 23, 1999.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Karen L. Daniel, of Oak Park, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Linda S. Kagan, of Chicago, for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Latasha D. Edwards, appeals from her convictions of armed violence, aggravated battery with a firearm and aggravated discharge of a firearm. Defendant maintains (a) that there was insufficient evidence for the trial judge to find her guilty of armed violence predicated on aggravated battery; (b) that her conviction of aggravated battery with a firearm and one of her convictions of aggravated discharge of a firearm should be vacated under the "one-act-one-crime" doctrine; (c) that the version of the statute under which she was sentenced (720 ILCS 5/33A—3(a) (West 1996)) was unconstitutionally amended in violation of the single subject rule; and (d) that she should be entitled to day-for-day good-conduct credit. Although we disagree with defendant's first argument, we agree with her other three arguments and remand the cause for resentencing.

On April 16, 1997, Vivian Willis (Vivian) was shot in the leg in front of her sister Buffie's house in Waukegan. As a result, a Lake County grand jury returned an indictment against defendant and two

others, Barbara Armstrong and Lenora Polk. The indictment contained five counts pertaining to defendant: one count for armed violence (720 ILCS 5/33A—2 (West 1996)); one count for aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1996)); two counts for aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1996)) (one count for shooting at Vivian and a second count for shooting at Vivian's sister, Falisa); and one count for unlawful use of a weapon (720 ILCS 5/24—1(a)(4) (West 1996)).

Defendant's bench trial began on July 16, 1997. The State called several witnesses in its case in chief, including Vivian, Terry Willis, Falisa Willis, Kenesha Davis and Doreen Bryant. Each of those individuals, along with Buffie (collectively, the Willis party), was at the Rocks Inn nightclub in Waukegan on April 15. Defendant and her two friends, Armstrong and Polk (collectively, the defendant's party), were also at the nightclub. Shortly after midnight, as the Willis party was leaving the nightclub, defendant and Buffie became involved in an altercation. Members of both parties intervened and broke up the fight, and Vivian and Armstrong then began fighting. The two groups subsequently left the nightclub. Bryant and Davis testified that, in the parking lot, they saw defendant get into a car and heard defendant say that she would be back. The Willis party went to Buffie's house, which was one block from the nightclub.

The Willis party was standing in front of Buffie's house when Armstrong drove up in a maroon car. Defendant and Polk were in the backseat. Defendant exited the car, pointed a gun at Terry and said, "I am back now, bitches. What's up." Polk pointed at Vivian and yelled, "[N]o, it was not him. It was her." Defendant turned and shot at Vivian, and the bullet struck Vivian in the bottom of her right leg. A boy pushed Vivian to the ground, and everyone else scattered. Defendant spotted Falisa and Rachel Willis, who were hiding between Buffie's house and the house next door, and fired one or two errant shots at them. Defendant reentered Armstrong's maroon car, and the car sped off.

Shortly thereafter, Officer Fernando Shippley, who was on duty in the area and heard the shots, pulled over the maroon car. Armstrong was the driver, and defendant and Polk were the passengers. All three were arrested. The police recovered a .38-caliber revolver with three spent and three live cartridges from the car.

Vivian testified that defendant was approximately five or six feet from her when defendant fired the gun. Vivian stated that she felt something hit her leg and that she "thought it was rocks or something." She testified that, although she did not immediately feel pain in her leg, a week later the pain "was kind of bad." Vivian experienced difficulty walking immediately after the incident.

Janet Trimaico, a nurse at St. Therese Hospital in Waukegan, testified that she treated Vivian in the emergency room on April 27. Trimaico stated, "[Vivian] had actually two wounds, gun shot wounds through and through. Two small circular wounds on either side of [the] front of her shin."

Defendant testified in her own behalf. According to defendant, Buffie initiated the fight with her and cut defendant's face with a broken bottle. Defendant and her friends immediately left the nightclub and jumped in a car. As the defendant's party drove away, the Willis party chased and beat on the car and threatened defendant. When defendant arrived home, the cut on defendant's face was still bleeding. Armstrong offered to drive defendant to the hospital for treatment. Defendant brought a gun with her since, in her words, she was "scared."

Armstrong drove her car past Buffie's house when, according to defendant, Terry ran in front of the car and attempted to pull defendant from the backseat. Defendant heard people yelling "Get her, Terry," and defendant grabbed her gun and fired a shot into the air. Everyone but two people ran, and defendant fired two more shots into the air to clear the area. The police stopped the car after the defendant's party left the scene.

The trial court found defendant's testimony incredible and orally found defendant guilty on all five counts. The written order entitled "Judgment and Sentence," however, excludes the conviction on the unlawful use of weapons count and instead contains guilty findings for the four remaining counts (armed violence, aggravated battery with a firearm and both counts of aggravated discharge of a firearm). Defendant was sentenced to 15-year concurrent terms of imprisonment on those four counts. The sentencing order further states, "Truth in sentencing applies (Defendant to serve 85%)."

Defendant's first contention is that Vivian did not suffer "great bodily harm" as required by section 12—4(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/12—4(a) (West 1996)) (aggravated battery statute). Defendant was indicted for armed violence predicated on aggravated battery. According to defendant, since Vivian did not suffer great bodily harm from her gunshot wound, the trial court erred in finding defendant guilty of armed violence.

■■ Section 33A—2 of the Code states, "A person commits armed violence when, while armed with a dangerous weapon, [s]he commits any felony defined by Illinois Law." 720 ILCS 5/33A—2 (West 1996). Section 12—4(a) provides, "A person who, in committing a battery, intentionally or knowingly causes great bodily harm *** commits aggravated battery." 720 ILCS 5/12—4(a) (West 1996). Whether a partic-

ular injury constitutes great bodily harm is a question of fact. *People v. Doran*, 256 Ill. App. 3d 131, 136 (1993).

Defendant concedes that Vivian's injury is the type of "bodily harm" that would constitute a simple battery. See 720 ILCS 5/12—3(a) (West 1996). However, as defendant points out, the term "great bodily injury," an element of the offense of aggravated battery, "is an injury of a graver and more serious character than an ordinary battery." *People v. Costello*, 95 Ill. App. 3d 680, 684 (1981). Defendant asserts that Vivian's injury did not constitute "great bodily harm," since (a) Vivian did not feel pain immediately after she was shot, (b) Vivian was not hospitalized, and (c) the only medical treatment Vivian received was a gauze pad which she wore for one day. We find defendant's argument disingenuous at best.

■ In determining whether an injury constitutes great bodily harm, the relevant question for the trier of fact to answer is not what the victim did or did not do to treat the injury but what injuries the victim in fact received. *Costello*, 95 Ill. App. 3d at 686. As was stated in *Costello*:

> "In a bench trial in a criminal case, it is for the trial court to hear the testimony and determine the credibility of the witnesses. Where the truth lies is a matter peculiarly for the trier of fact, and it is not for a reviewing court to substitute its opinion therefor. [Citation.] A reviewing court will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to the defendant's guilt [citation], or where the evidence of the prosecution is improbable, unconvincing or contrary to human experience. [Citation.]" *Costello*, 95 Ill. App. 3d at 685.

Thus, it was for the trial court to determine, from the facts, whether Vivian's injury constituted great bodily harm.

Vivian testified as follows:

> "Q. Did you feel pain [when you were shot]?
> A. No, not at the time.
> Q. Did you later feel pain?
> A. Yes.
>
>         \* \* \*
>
> Q. Did you feel pain after [April 16]?
> A. Yes, not that day. It was like a week later. That's when my pain started coming in.
> Q. For a week later you felt—how was the pain?
> A. It was kind of bad.
> Q. And was it hard to walk?
> A. At first it was. Afterwards, no.
> Q. And that bullet would you tell us what it did when it hit you?
> A. The doctor said it went in and exited right out.

Q. Do you still have a scar?

A. Yes."

Furthermore, Trimaico testified that Vivian suffered a gunshot wound which went through her shin. Certainly the trial court did not err in finding that Vivian suffered great bodily harm.

Defendant asserts that a victim must suffer a broken bone, experience an injury to the head or skull, or undergo hospitalization in order for the injury to be categorized as "great bodily harm." We disagree, since, as earlier stated, the trier of fact is to determine whether a victim suffered great bodily harm based on the nature of the injury itself. *Costello*, 95 Ill. App. 3d at 686.

■ Second, defendant contends that her convictions of aggravated battery with a firearm and of aggravated discharge of a firearm toward Vivian should be vacated, since these convictions were based on the same physical act as defendant's conviction of armed violence—that act being the shooting of Vivian. Defendant quotes *People v. Garcia*, 179 Ill. 2d 55, 71 (1997), in which our supreme court discussed the "one-act-one-crime" doctrine: "When multiple convictions of greater and lesser offenses are obtained for offenses arising from a single act, a sentence should be imposed on the most serious offense and the convictions on the less serious offenses should be vacated." The State concedes that defendant fired only one shot at Vivian and that defendant should have been convicted of only one crime as to Vivian—that of armed violence. We agree. See *People v. Townsend*, 275 Ill. App. 3d 200, 207 (1995) (aggravated battery is lesser-included offense of armed violence); *People v. Robinson*, 250 Ill. App. 3d 824, 829 (1993) (vacating six convictions of aggravated discharge of a firearm where defendant was convicted of six counts of armed violence based on shooting of six individuals). Accordingly, we vacate defendant's convictions of aggravated battery with a firearm and of aggravated discharge of a firearm toward Vivian.

■ Third, defendant maintains that her 15-year sentence for armed violence should be vacated. We agree. Defendant was convicted of armed violence with a category I weapon (a Class X felony) for conduct that occurred on April 16, 1997, and was sentenced under section 33A—3(a) of the Code. Prior to January 1, 1995, armed violence with a Category I weapon was a Class X felony, punishable by a minimum of six years' imprisonment. 720 ILCS 5/33A—3(a) (West 1992); 730 ILCS 5/5—8—1(a)(3) (West 1994). However, Public Act 88—680 (Pub. Act 88—680, eff. January 1, 1995) increased the minimum term for armed violence with a category I weapon to 15 years' imprisonment. 720 ILCS 5/33A—3(a) (West 1996).

In *People v. Dainty*, 299 Ill. App. 3d 235, 241-44 (1998), *appeal al-*

*lowed*, 182 Ill. 2d 556 (1999), it was nonetheless determined that Public Act 88—680 violates the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) and that the Act's provisions are therefore unenforceable. *Dainty* was a third district case assigned to and decided by a second district panel. *People v. Williams*, 302 Ill. App. 3d 975, 979 (1999). The second district followed *Dainty* in *Williams*, 302 Ill. App. 3d at 979. But see *People v. Wiggins*, 298 Ill. App. 3d 766, 768-71 (1998) (first district finding that Public Act 88—680 does not violate the single subject rule); *People v. Boatman*, 303 Ill. App. 3d 589 (1999) (fourth district following *Wiggins*). As we chose to follow *Dainty* in *Williams*, we do the same here and hold that defendant was sentenced under an unconstitutional statute.

As a remedial measure, defendant asks us either to reduce her sentence to the six-year minimum term of imprisonment of section 33A—3(a) (invoking 730 ILCS 5/5—8—1(a)(3) (West 1994)) or to remand the cause for resentencing. In light of *Dainty*, we choose the latter. See *Dainty*, 299 Ill. App. 3d at 244 (remanding for resentencing); *Williams*, 302 Ill. App. 3d at 980 (same).

■ Fourth, defendant maintains that she should be eligible for day-for-day good-conduct credit. The trial court found applicable the "truth-in-sentencing" provisions of section 3—6—3(a)(2)(ii), (iii) (730 ILCS 5/3—6—3(a)(2)(ii), (a)(2)(iii) (West 1996)), which were amended by Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995). Prior to the enactment of Public Act 89—404, a person convicted of armed violence was eligible to receive one day of good-conduct credit for each day of service in prison. 730 ILCS 5/3—6—3(a)(2) (West 1994). Public Act 89—404 amended this provision to provide that a prisoner incarcerated for armed violence with a category I or II weapon is eligible to receive no more than 4.5 days of good-conduct credit for each month of his sentence. See 730 ILCS 5/3—6—3(a)(2)(iii) (West 1996). However, our supreme court recently determined that Public Act 89—404 violates the single subject clause of the Illinois Constitution and is therefore unenforceable. *People v. Reedy*, 186 Ill. 2d 1, 14-15 (1999) (modified upon denial of rehearing). Thus, the provisions of section 3—6—3(a)(2)(iii), as amended by Public Act 89—404, cannot constitutionally apply to defendant.

The State argues that, since defendant was convicted of armed violence that occurred on April 16, 1997, Public Act 89—462 (Pub. Act 89—462, eff. May 26, 1996), which contains the same good-conduct credit provisions as those of Public Act 89—404, applies in this case. However, the *Reedy* court unequivocally rejected the same argument and found that Public Act 89—462 was not curative legislation. *Reedy*, 186 Ill. 2d at 14-15. We therefore hold that defendant is eligible for

day-for-day good-conduct credit upon resentencing. See 730 ILCS 5/3—6—3(a)(2) (West 1994).

On remand, defendant should be sentenced based on her two remaining convictions: armed violence and aggravated discharge of a firearm toward Falisa.

Affirmed in part and reversed in part; cause remanded for resentencing.

GEIGER and THOMAS, JJ., concur.