THIRD DIVISION

                                         Date Filed: May 16,2001

No. 1-00-0751

THE PEOPLE OF THE STATE OF ILLINOIS,)   Appeal from the

                                    )   Circuit Court of

          Plaintiff-Appellee,       )   Cook County.

                                    )

          v.                        )   No. 97 CR 822

                                    )

DOMINICK STEPPAN,                   )   Honorable 

                                    )   Michael B. Bolan,

          Defendant-Appellant.      )   Judge Presiding.                  

      

     PRESIDING JUSTICE HALL delivered the opinion of the court:

     Following a bench trial, the defendant, Dominick Steppan, was found guilty of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 1996)), armed violence (720 ILCS 5/33A-2(West 1996)), and aggravated battery (720 ILCS 5/12-4(a) (West 1996)).  The defendant was sentenced to 26 years' imprisonment in the Department of Corrections on the aggravated battery with a firearm conviction.  

     
The defendant appeals, raising the following issues: (1) whether he was denied the effective assistance of counsel by his trial attorney's failure to request a fitness hearing prior to trial; (2) whether the trial court erred in retroactively finding him fit to stand trial; (3) whether the trial court erred in imposing sentence on his aggravated battery with a firearm conviction; and (4) whether the case must be remanded for sentencing.  We affirm in part, vacate in part and remand for further proceedings.

     The defendant was indicted and charged with the offenses of attempted first degree murder, aggravated battery with a firearm, two counts of armed violence, and three counts of aggravated battery, all in connection with the shooting of Charles Cox. Prior to trial, the State dismissed one of the armed violence counts and two of the aggravated battery counts. 

     At the defendant's bench trial, Cox testified that on December 23, 1996, he had been drinking at a bar with the defendant and Dave Siecky.  Cox accepted a ride from the defendant and Siecky.   Outside the bar, they were joined by a third man.  The four men drove to an alley which, Cox subsequently learned, was behind the defendant's house.   The defendant and Siecky went into the house.  Approximately 15 minutes later, the defendant came out of the house and ordered Cox out of the car.  When Cox exited the car, the defendant shot him in his right thigh, saying, "Merry Christmas, m----- f-----."  Cox was eventually discovered and transported to a hospital.  The defendant did not testify. 

     The trial court acquitted the defendant of attempted first degree murder and found him guilty of aggravated battery with a firearm, armed violence, and aggravated battery.   The trial court also found that the aggravated battery conviction merged with the armed violence conviction. 

     Defense counsel filed a motion for a judgment of acquittal or, in the alternative, a new trial.  He also filed a motion seeking to withdraw as counsel for the defendant on the basis that the defendant would not communicate or cooperate with him.   The defendant filed a motion alleging that he had received ineffective assistance of counsel.   
Inter
 
alia
, the defendant alleged that defense counsel did not request a fitness hearing for the defendant even though he was aware that the defendant was taking psychotropic medication and was receiving out-patient treatment for a psychological disorder.  

     The trial court granted defense counsel's motion to withdraw and appointed the public defender to represent the defendant.   The trial court also ordered that the defendant be examined to determine his fitness for trial and for sentencing.  Subsequently, private counsel filed an appearance on behalf of the defendant.  

     Pursuant to the trial court's order, the defendant was examined by Dr. Stafford Christopher Henry, a forensic psychiatrist.  Based upon his examination of the defendant, Dr. Henry concluded that the defendant was not currently fit for sentencing.  In the course of his examination, Dr. Henry observed that the defendant initially had difficulty enumerating the charges of which he had been found guilty.  The defendant described the trial judge as "sounding like a VCR going very fast" and that he could not understand what the trial judge was saying.  The defendant described his mental state on the day of the trial as "confused and garbled."  At one point he believed that a witness who was testifying was actually using the voice of another.  When he attempted to bring his psychotic mental state to the attention of his attorney, the attorney told him to "shut-up."   

     The defendant told Dr. Henry that since the age of 13 he had heard voices commanding him to hurt himself.  He experienced an auditory hallucination approximately four days before the trial.   During the trial, he heard voices saying "there is no justice and to get out."   The defendant admitted to a long history of depressive symptomatology and stated that he was currently and actively suicidal.  At the time of the examination, the defendant was taking Depakote, Chlorpromazine and cithium carbonate.  

     Dr. Henry diagnosed the defendant as suffering from a bipolar affective disorder, a personality disorder not otherwise specified with antisocial features, alcohol dependence, and attention deficit disorder.   In Dr. Henry's opinion, the defendant was unfit for sentencing and was subject to involuntary admission.   However, Dr. Henry was unable to render an opinion at that time as to whether the defendant had been fit to stand trial, due to the defendant's current inability to discuss his thoughts and behavior at the trial as well as the fact that the doctor had not yet received the defendant's medical records which would provide information regarding his mental state at the time of his trial. 

     The defendant was placed in the custody of the mental health department and sent to the Elgin Mental Health Center.  After treatment, the staff at Elgin concluded that the defendant was fit for sentencing with medication.  After examining the defendant, Dr. Henry agreed that the defendant was fit for sentencing with medication.   The defendant was currently taking lithium and Depakote for mood vacillations and impulsivity, and Thorazine for nervousness, agitation, irritability and impulsivity.  

     On September 2, 1999, following a hearing, the trial court found the defendant fit for sentencing with medication.   However, the trial court ordered that the defendant be examined to determine whether he had been fit to stand trial. 

     At the defendant's October 26, 1999, fitness for trial hearing, Dr. Henry testified as follows.

     Dr. Henry examined the defendant on September 28, 1999.   During the examination, the defendant attempted to focus on his belief that he had received inadequate representation at his trial.   One of the traits of the antisocial personality disorder that the defendant suffered from was deceitfulness.   Dr. Henry noted several instances in which the defendant had been deceitful.  The defendant stated that he had been an alcoholic since age 13 and had a long history of alcohol dependence.  However, in his Cermak Health Service records, the defendant described himself as a "social drinker."   When the doctor confronted him about the discrepancy, the defendant responded that he lied because he did not like going to meetings.   The defendant also told Dr. Henry that he drank alcohol repeatedly in the weeks preceding the trial as well as during the trial itself.  He even secreted alcohol on his person so that he could drink during the trial.   However, he told the probation department in connection with its social investigation that he had last consumed alcohol one year ago and had been sober ever since.   A pivotal factor in Dr. Henry's conclusion that the defendant was unfit for sentencing was the defendant's suicidal feelings.  However, upon his admission to Elgin, the defendant reported that his thoughts of suicide were fleeting and were nothing serious.   In addition, the defendant had only been at Elgin for 21 days when he was deemed fit to be sentenced; in Dr. Henry's experience, people were generally at Elgin for a significant amount of time and that a shorter stay was not common. 

     Dr. Henry further testified that the defendant's initial recollection of his trial was confused and garbled but, upon further questioning, he was able to provide details about what he remembered occurring at the time of his trial.   He was aware that he had been offered a plea bargain of two years in exchange for a plea of guilty to a lesser charge and that he had refused the offer because he had not committed the crime.   The defendant also recalled specific exchanges with his attorney; how he tried to bring certain matters to his attorney's attention, such as the existence of two witnesses he wanted his attorney to call and the fact that he was on psychotropic medication.  He also recalled the testimony of a witness and his response to it.  

    One of the documents Dr. Henry utilized in reaching his conclusion was the transcript of the proceeding wherein the defendant elected to waive a jury trial in favor of a bench trial.  Dr. Henry read into the record the following colloquy which had occurred at that proceeding:

     "'THE COURT: Let the record reflect we are in the Judge's chambers because we have a jury in the courtroom in the presence of the Defendant, his attorney, and the Prosecutors in this case.

      Your lawyer indicated to me, Mr. Steppan, that you are asking, waiving the right to trial by jury and are proceeding to trial by the Court.  Realize that, before you do that, the right to trial by jury is one that is guaranteed by the Constitution of the United States, and it consists of 12 persons deciding whether or not you are guilty, and so if you decide to have the case tried by the Judge, you give up a constitutional right.  Do you understand that?

      THE DEFENDANT: Yes, sir.

      THE COURT: And there are no promises or considerations made?

      THE DEFENDANT: From nobody, from nobody, no, sir; it is my choice.  This is my choice, your Honor.

      THE COURT: Because - - 

      THE DEFENDANT: It is my understanding you decide the facts, you decide the law.  The Jury decides the facts.  I would rather take a bench trial, and if you want me to sign - -'

***

     'THE DEFENDANT: ***  a Jury Waiver - -

      THE COURT: That is the next thing I have to do.  It is a matter of law.  Sign your name to the Waiver of the right to trial by jury, and indicate that Mr. Petro (defense counsel) is preparing the form.

      THE DEFENDANT: Could I ask you one question?  I have two (2) witnesses that the State - - that the State has been subpoenaing since the case has been going on.  For some reason or another - -

      MR. PETRO: Do you want to talk to me about this first?

      THE COURT: Here is the thing - - 

      THE DEFENDANT: I am just wondering why they weren't subpoenaed because they are in my favor now.  You understand what I am saying?

      THE COURT: Those kind of things, Mr. Steppan, you know - -

      THE DEFENDANT: I understand, I understand.

      THE COURT: You should discuss with your lawyer because you have a lawyer.

      THE DEFENDANT: And I will.

      THE COURT: You are to use that 6th Amendment right to an attorney.  Keep him as a barrier between himself and everyone else.  You can't represent both yourself and use an attorney, so mention those matters to your lawyer, and we will see what we can do.

      MR. PETRO: I think we should correct one thing.  He indicated that he thought that the jury was going to decide the facts and that you were going to decide the law.  At a bench trial, you would decide them both.

      THE DEFENDANT: Right.

      THE COURT: Right.  He was correct on that.  Mr. Steppan tried one case previously where it was [a] bench trial, and the Judge - - I was the Judge.  I decided the law and the facts in the case, and I have no bias against the Defendant.

     THE DEFENDANT: Thank you, sir.  If I thought you did, I wouldn't take a bench trial.  I would go with a jury.

      THE COURT: Let the record reflect that Mr. Steppan is executing a written Jury Waiver.  At this time, I am going to discharge the jury.

      THE DEFENDANT: We will be here tomorrow?

      THE COURT: We are going to start in a minute.  Let's go into the court.'"  

     Dr. Henry found the above exchange to be significant for several reasons.  It indicated that, at the time of the trial, the defendant had a clear understanding of his choice to have either a jury or a bench trial.   It also indicated that the defendant was aware of the proper decorum to assume in addressing the judge.    On another occasion, the defendant had apologized to the judge for being late.   It further indicated his ability to assimilate information.  

     Based upon these factors, Dr. Henry concluded within a reasonable degree of medical certainty that at the time of his trial, the defendant was fit to stand trial with medication.   The defendant told him that, at the time of his trial, he was taking lithium, Thorazine, Depakote
, 
and Ritalin, all of which would have aided his fitness at the time of his trial.  

     On cross-examination, Dr. Henry testified that in reaching his opinion that the defendant was not fit for sentencing, he had relied largely on the defendant's "self-report" in which he reported his symptoms to be pronounced and that he was acutely suicidal.  

     According to Dr. Henry, the use of alcohol with psychotropic medications could cause a clouding of one's mental ability, cause a lot of frustration and a tendency to be impulsive.  While Dr. Henry could not state with certainty what effects the consumption of alcohol, in combination with the psychotropic drugs, had on the defendant at the time of his trial, he relied on the information gathered from his evaluations of the defendant, the psycho-social history provided by the defendant's wife, as well as the trial transcripts in evaluating the defendant's mental state at the time of his trial. 

     Dr. Henry acknowledged that it was easier to determine someone's fitness closer to the time frame for which the opinion was being sought but denied that it would be a better based opinion.   The fact that the defendant suffered some perceptual difficulties, such as the witness speaking with another person's voice, would not have caused his decision to reject the plea agreement.  The defendant was able to explain why he rejected the plea agreement, and it was difficult to imagine a continuous disturbance that interfered with his reasoning ability relative to the plea offer that he considered over time.  

     At the conclusion of the hearing, the trial court found that the defendant had been fit for trial.  Following sentencing, the defendant filed a timely notice of appeal.

     To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance so prejudiced the defendant as to deny him a fair trial.  
People v. Mitchell
, 189 Ill. 2d 312, 332, 727 N.E.2d 254, 267 (2000); 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  

     In Illinois, a defendant is presumed fit to stand trial, to plead and to be sentenced.  A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense.  725 ILCS 5/104-10 (West 1996).  A trial court has a duty to order a fitness hearing whenever there exists a 
bona
 
fide
 doubt as to the defendant's ability to understand the charges against him and to participate in his defense.  
People v. Kinkead
, 168 Ill. 2d 394, 407, 660 N.E.2d 852, 857 (1995).

     In 
Mitchell
, our supreme court overruled prior case law which had interpreted section 104-21 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104-21 (West 1994)) as providing that a 
bona
 
fide
 doubt as to a defendant's fitness was raised and a fitness hearing must be held if the defendant was taking psychotropic medication.  See 
Mitchell
, 189 Ill. 2d at 330-31, 334, 727 N.E.2d at 266-67, 268 (overruling in part 
People v. Gevas
, 166 Ill. 2d 461, 655 N.E.2d 894 (1995), and overruling 
People v. Brandon
, 162 Ill. 2d 450, 643 N.E.2d 712 (1994)).  Moreover, the Illinois legislature amended section 104-21(a) effective December 31, 1996, to provide that a defendant who was receiving psychotropic drugs would not be presumed unfit to stand trial solely by virtue of receiving those drugs or medications.  
People v. Wiggins
, 312 Ill. App. 3d 1113, 1115, 728 N.E.2d 772, 774 (2000); see 725 ILCS 5/104-21(a) (West 1998).  

     Whether a 
bona
 
fide
 doubt as to a defendant's fitness has arisen is generally a matter within the trial court's discretion.  
People v. Damico
, 309 Ill. App. 3d 203, 209, 722 N.E.2d 194, 200 (1999).  Relevant factors that a trial court may consider in assessing whether a 
bona
 
fide
 doubt of fitness exists include a defendant's "'"irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial."' [Citations.]" 
Damico
, 309 Ill. App. 3d at 209, 722 N.E.2d at 200.  It is undisputed, however, that there are "'"no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated."' [Citations.]" 
Damico
, 309 Ill. App. 3d at 209, 722 N.E.2d at 200.  Some doubt of a defendant's fitness is not enough.  
Damico
, 309 Ill. App. 3d at 209, 722 N.E.2d at 200.

     The defendant contends that a 
bona
 
fide
 doubt as to his fitness to stand trial existed is borne out by the following factors: that he was taking psychotropic medication around the time of his trial, that he had a prior history of mental illness, that the trial court ordered him to undergo psychiatric examinations and conducted fitness hearings, and that, initially, he was found unfit for sentencing even though he was on medication.  
The defendant also points out that his trial attorney withdrew from representing him because he could not communicate with the defendant.

     A defendant may be competent to participate at trial even though his mind is otherwise unsound.  
Damico
, 309 Ill. App. 3d at 210, 722 N.E.2d at 201.  Fitness speaks only to a person's ability to function within the context of a trial; it does not refer to competence in other areas.  
Damico
, 309 Ill. App. 3d at 210, 722 N.E.2d at 201.  No single factor in and of itself raises a 
bona
 
fide
 doubt of a defendant's fitness to stand trial; the fact that the defendant suffers a mental disturbance or requires psychiatric treatment does not necessarily raise a 
bona
 
fide
 doubt.  
Damico
, 309 Ill. App. 3d at 210, 722 N.E.2d at 201.  Even evidence of extreme disruptive behavior does not compel the conclusion that a 
bona
 
fide
 doubt exists as to a defendant's fitness to stand trial.  
Damico
, 309 Ill. App. 3d at 210, 722 N.E.2d at 201.

     The factors cited by the defendant do not raise a 
bona
 
fide
 doubt as to his fitness to stand trial.  The record in this case supports the finding that the defendant was able to understand the charges against him and to participate in his defense.  Dr. Henry observed that, while the defendant's initial recollection of the trial was garbled and confused, upon further questioning, he was able to recall details about the trial.  He also was able to articulate a reason for refusing the plea offer made by the State, namely, that he had not committed the act charged. The defendant's exchange with the trial court in connection with his waiver of a jury trial indicated that he understood the rights he was giving up, that he understood the function of the trial court in a bench trial, and that he was participating in his defense by asking about the subpoenaing of witnesses favorable to him.

     The fact that the defendant was initially found unfit for sentencing does not raise a 
bona
 
fide
 doubt as to the defendant's fitness to stand trial in this case.  As Dr. Henry explained, his opinion that the defendant was unfit for sentencing was based upon what the defendant told him, a pivotal factor being the defendant's thoughts of suicide.  Also, Dr. Henry was not as yet in possession of the defendant's records from Cermak Health Service.  Subsequent to formulating his opinion that the defendant was unfit for sentencing, Dr. Henry learned that the defendant had acknowledged at Elgin that his thoughts of suicide were not serious and that the defendant had told inconsistent stories about his alcohol consumption.  Therefore, the fact that the defendant was found unfit for sentencing does not raise a 
bona
 
fide
 doubt as to his fitness to stand trial.  

     The defendant's reliance on 
People v. Jackson
, 57 Ill. App. 3d 809, 373 N.E.2d 583 (1978), is misplaced.  In that case, the trial court had ordered a fitness examination of the defendant prior to sentencing but had proceeded to sentence the defendant without him having been examined and despite having been informed that the defendant had not received the medication necessary to maintain his fitness.  
Jackson
, 57 Ill. App. 3d at 814, 373 N.E.2d at 587.  The reviewing court reversed and remanded for a new sentencing hearing finding that a 
bona
 
fide
 doubt existed as to the defendant's fitness to be sentenced, since the trial court had previously found the defendant fit on the basis that he was taking medication which allowed him to cooperate with his attorney, and that by ordering the presentence fitness examination, the trial court indicated a concern as to the defendant's fitness.  
Jackson
, 57 Ill. App. 3d at 814, 373 N.E.2d at 587.  In the instant case, the trial court ordered the presentence fitness examination because the defendant requested it, not because an issue as to fitness had been raised prior to trial or because the trial court 
sua
 
sponte
 raised the issue of fitness based upon a concern as to the defendant's fitness.  In addition, the finding of unfitness to be sentenced was based upon certain factors that were later discovered to be unreliable.

     Finally, the fact that the defendant's trial attorney withdrew because he could not communicate with the defendant does not raise a 
bona
 
fide
 doubt of the defendant's fitness to stand trial in the absence of a reflection in the record of the nature and the extent of the communication problem between the defendant and his trial counsel.  See 
Jackson
, 57 Ill. App. 3d at 814, 373 N.E.2d at 586.  

     We conclude that the defendant has failed to demonstrate that a 
bona
 
fide
 doubt existed as to his fitness to stand trial, and therefore, the defendant has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness.  Having determined that the defendant failed to satisfy the first prong of the 
Strickland
 test, we hold that the defendant was not deprived of the effective assistance of counsel.  See 
People v. Burgess
, 176 Ill. 2d 289, 313, 680 N.E.2d 357, 367 (1997) (defendant must establish both prongs of the 
Strickland
 test in order for the court to find the ineffective assistance of counsel).

     Next, the defendant contends that the trial court erred in retroactively finding him fit to stand trial.

     Initially, we note that our supreme court's prior disapproval of retroactive fitness hearings has been overcome.  See 
Mitchell
, 189 Ill. 2d at 338, 727 N.E.2d 254, 270; 
People v. Neal
, 179 Ill. 2d 541, 554, 689 N.E.2d 1040, 1046 (1997); 
Burgess
, 176 Ill. 2d at 303, 680 N.E.2d at 363.  

     A trial court's determination regarding fitness will not be disturbed on review unless it is against the manifest weight of the evidence.  
People v. Cortes
, 181 Ill. 2d 249, 276-77, 692 N.E.2d 1129, 1141 (1998).

     The defendant maintains that the State failed to carry its burden of proving that the defendant was fit to stand trial.  He argues that the finding that he was unfit for sentencing raises a 
bona
 
fide
 doubt that he had been fit to stand trial.  He further argues that Dr. Henry was unable to render an opinion as to the effect on his mental state of the combination of alcohol and the psychotropic drugs he was ingesting at the time of his trial.

     The defendant's reliance on 
People v. Johnson
, 121 Ill. App. 3d 859, 460 N.E.2d 336 (1984), is misplaced.  In that case, the reviewing court determined that the fact that the defendant was found unfit for sentencing presented a risk that the defendant may have been unfit for trial. However, in finding that a 
bona
 
fide
 doubt existed as to the defendant's fitness for trial, the court also relied on the additional factors that defendant's demeanor both before and at trial indicated that he had serious mental problems and defense counsel's representations to the trial court that a doctor had informed him that the defendant was unfit for trial.  
Johnson
, 121 Ill. App. 3d at 861, 460 N.E.2d at 338.  None of those additional factors are present in this case.  Moreover as we previously noted, the initial finding that the defendant was unfit for sentencing was based upon factors later determined to be unreliable.  

     While Dr. Henry could not render an opinion as to the effect that alcohol had on the defendant, given the psychotropic drugs he was taking at the same time, the doctor testified that his  conversations with the defendant and the verified documentation established the clarity of the defendant's mental state and his ability to process information.  The doctor also rejected the concept that psychotropic drugs caused the defendant to act impulsively in rejecting the State's plea offer in light of the defendant's consideration of the offer over some period of time prior to rejecting it. Further, it must be noted that the defendant's testimony as to his alcohol intake must be subject to suspicion given the inconsistent information he gave regarding his alcohol usage.  

     We conclude that the trial court's decision that the defendant was fit for trial was not against the manifest weight of the evidence.  

     The defendant contends that the trial court erred when it sentenced him on his conviction for aggravated battery with a firearm.

     
The defendant was found guilty of armed violence, aggravated battery with a firearm and aggravated battery.  The trial court found that the aggravated battery conviction merged into the armed violence conviction.  At the defendant's sentencing hearing, the trial court imposed a sentence only on the aggravated battery with a firearm conviction.  

      The defendant correctly argues that when multiple convictions of greater or lesser offenses arise from a single act, a sentence should be imposed on the most serious offense, and the convictions on the less serious offenses should be vacated.  
People v. Edwards
, 304 Ill. App. 3d 250, 255, 710 N.E.2d 507, 510 (1999).  The question then becomes, which offense is the greater of the two?          The State argues that in this case, neither offense could be deemed the greater of the other in light of 
People v. Cervantes
, 189 Ill. 2d 80, 723 N.E.2d (1999).  In 
Cervantes
, our supreme court held that Public Act 88-680 (Pub. Act 88-680, eff. January 1, 1995), under which the legislature increased the minimum penalty for armed violence with a category I weapon to 15 years' imprisonment (see 720 ILCS 5/33A-3(a) (West 1996)), was unconstitutional as violative of the single subject rule.  
Cervantes
, 189 Ill. 2d at 98, 723 N.E.2d at 274.  The State maintains that since prior to the 1995 amendment armed violence carried the same sentence as aggravated battery with a firearm, neither offense could be deemed the greater of the other, and therefore, the trial court had the right to sentence the defendant on either offense.

     Both aggravated battery with a firearm and armed violence (with a category I weapon) are Class X felonies.  See 720 ILCS 5/12-4.2(b), and 720 ILCS 5/33A-3(a) (West 1994).  A longer prison sentence would appear to represent a legislative determination that one offense is more serious than another. 

People v. Cosby
, 305 Ill. App. 3d 211, 228, 711 N.E.2d 1174, 1187 (1999).  However, in 
People v. Mack
, 105 Ill. 2d 103, 473 N.E.2d 880 (1984), our supreme court noted that such an approach is of no assistance where the offenses carry the same penalty.  Thus, where the defendant was convicted of three counts of murder but where there was only one victim, the court determined that the most serious of the three counts was the one with the more culpable mental state of the intentional and knowing killing of the victim rather than the shooting of the victim with a gun knowing the shooting created a strong probability of death or great bodily harm.  
Mack
, 105 Ill. 2d at 137, 473 N.E.2d at 898.  

     As charged in this case, it would appear that aggravated battery with a firearm would be the more serious offense since it carried the more culpable mental state than did the armed violence charge: the defendant was charged with intentionally or knowingly discharging a firearm and knowingly causing injury to the victim, whereas the armed violence charge stated only that the defendant committed aggravated battery while armed with a handgun.  See 
People v. Bowens
, 307 Ill. App. 3d 484, 495, 718 N.E.2d 602, 611 (1999) (although attempted murder and armed violence are both Class X felonies, attempted murder is considered the more serious offense since it is a specific intent crime).  

     We observe, however, that at the time the defendant committed the offenses and was sentenced in this case, armed violence carried a minimum sentence of 15 years, while aggravated battery with a firearm carried a minimum sentence of 6 years, indicating that the  legislature had determined that armed violence was a more serious offense than aggravated battery with a firearm.  This conclusion finds further support in the recent amendment to section 33A-1, where the legislature expressed its concern with the use of dangerous weapons in the commission of a felony offense recognizing that the use of a firearm in the commission of a criminal felony offense "significantly *** increases the potential for harm to more persons."  Pub. Act 91-404, §5, eff. January 1, 2000.  The amendment to section 33A-1 further provides as follows:

     "(3) Current law does contain offenses involving the use or discharge of a gun toward or against a person, such as aggravated battery with a firearm, aggravated discharge of a firearm, and reckless discharge of a firearm; however, the General Assembly has legislated greater penalties for the commission of a felony while in possession of a firearm because it deems such acts as more serious."  Pub. Act 91-404, §5.  

     Section 33A-1(a) is a clear indication that the legislature has determined that armed violence is a more serious offense than aggravated battery with a firearm.  The fact that the statute increasing the minimum penalty for armed violence was held unconstitutional for violating the single subject rule does not cast doubt on the legislature's determination in this regard.  See Pub. Act 89-462, eff. May 29, 1996 (legislature reenacted the 15-year minimum penalty for armed violence with a category I weapon).

     Moreover, this court has rejected the argument that the increased penalty for armed violence is disproportionate to the penalty for aggravated discharge of a firearm.  See 
People v. Shields
, 298 Ill. App. 3d 943, 948-50, 700 N.E.2d 168, 173-74 (1998); see also 
People v. Powell
, 299 Ill. App. 3d 92, 103, 701 N.E.2d 68, 75 (1998) (when determining the seriousness of a crime and the punishment for it, the legislature may take into consideration factors such as the frequency of the crime, the high risk of bodily harm associated with it, and the need to enact a more stringent penalty in order to halt an increase in the commission of a particular crime).  In 
Powell
, the court rejected the defendant's contention that aggravated battery with a firearm was a "more serious" offense than aggravated battery based upon great bodily harm.  
Powell
, 299 Ill. App. 3d at 103, 701 N.E.2d at 75. 
 

     Even if we were to ignore the fact that the legislature increased the minimum penalty for armed violence, we note that in 
Edwards
, the court vacated the aggravated battery with a firearm conviction and sentence even though it followed the line of cases, prior to 
Cervantes
, which had found Public Act 88-680 unconstitutional, and remanded the case for the defendant to be sentenced for armed violence under the preamended statute.  The court's action indicated that the fact that the penalties for armed violence and aggravated battery with a firearm were the same did not prevent the determination that armed violence was the more serious of the two offenses.  
Edwards
, 304 Ill. App. 3d at 255, 710 N.E.2d at 510.       

     Based upon all of the foregoing, we conclude that armed violence is the more serious offense and, therefore, the defendant's conviction and sentence for aggravated battery with a firearm must be vacated.

     Finally, 
we agree with the defendant that this case must be remanded to the trial court for sentencing on his armed violence conviction for the reason that the trial court did not impose a sentence on that conviction when the defendant was originally sentenced.  Since the sentencing error that the defendant alleges is unlikely to occur in the context of a new sentencing hearing, we need not reach the merits of the defendant's argument on this issue.   

     
The defendant's conviction and sentence for aggravated battery with a firearm are vacated; the defendant's conviction for armed violence is affirmed; and the case is remanded for the trial court to impose sentence on the armed violence conviction.

    Vacated in part and affirmed in part; cause remanded with directions.

    WOLFSON and BURKE, JJ., concur.