THIRD DIVISION

September 16, 1998

(
NUNC
 
PRO
 
TUNC
 AS OF JUNE 30, 1998)

No. 1--96--3644

PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of 

Plaintiff-Appellee, ) Cook County.

) 

v. ) 

) 

RHAMAL POWELL, ) Honorable

) Joseph J. Urso, 

Defendant-Appellant. ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Defendant Rhamal Powell was charged with two counts each of aggravated battery, aggravated battery with a firearm, armed violence and attempted first degree murder.  After a bench trial, defendant was found guilty of wounding two persons, and sentenced to 16 years' imprisonment on each count of attempted first degree murder and armed violence, to be served concurrently.  The remaining counts merged with the attempted first degree murder and armed violence convictions.  On appeal, defendant contends 
that(Nonpublishable material under Supreme Court Rule 23 omitted.) 
his sentence for armed violence violated the proportionate penalties clause of the Illinois Constitution of 1970 because the penalty for armed violence was disproportionate to the penalty for the predicate offense of aggravated battery
 (Nonpublishable material under Supreme Court rule 23 omitted.)
  
For the reasons set forth below, we affirm.

On August 25, 1995, at approximately 2:30 a.m., Patricia Baker (Baker) and Cherie Morris (Morris) were each shot when gunfire was exchanged in a gang related altercation which occurred in the vicinity of their Chicago Housing Authority (CHA) rowhouse located at 13141 South Langley.  After Baker and Morris subsequently picked defendant out of a police lineup, defendant was indicted by a grand jury and charged with two counts each of attempted first degree murder, armed violence, aggravated battery with a firearm, and aggravated battery.  

On August 12, 1996, the trial court simultaneously heard the separate bench trials of defendant and codefendants, Kareem Muhammad and Martize Dellinger.  Baker testified that she was sitting on the back porch of the CHA rowhouse with Morris and two other persons named “Jermaine and Joseph” when she saw defendant and codefendants walk from around the corner approximately 10 to 12 feet from the porch, and pull out guns.  Joseph then said, “Something don’t look right; those Hooks goin' to pop.”  Everyone on the porch jumped up and started running as Baker heard one of the three men say, “Don’t a motherfucker move.”  As Baker attempted to run inside the house, she heard “a lot” of shots.  Baker was able to get into the house, fell and crawled into the living room.  She realized she had been shot in the upper buttocks.  Baker stayed on the floor for approximately five minutes when she heard Morris screaming at the front door for her children to let her inside.  Baker saw that Morris had been shot in the foot.  Subsequently, Baker and Morris were taken in an ambulance to the hospital where Baker was treated for her gunshot wound with a wet saline dressing and was released from the hospital approximately three hours later.

Morris testified that she was sitting on the back porch with Baker, Jermaine and Joseph White.  As Morris was speaking to Joseph, Joseph said to her, "Don't look right," and "That's them Hooks.  They fixin' to shoot."  Morris looked behind her and saw defendant and codefendants approximately eight or nine feet from the porch.  Defendant and codefendants all had guns in their hands at the time.  Morris started running as defendant and codefendants "proceeded to shoot" and "continued to shoot" a number of shots that were "too many to count."  Because defendant and codefendants were shooting in the direction of the back door to the rowhouse, Morris had to run in the opposite direction toward the corner.  As Morris ran approximately three or four feet from the back door, she fell, not knowing that she was shot;  a bullet had gone through her right foot.  After "a second," she jumped up, started running, and fell again.  After she fell the second time, she could not get back up, so she "just laid there."  As Morris was lying on the ground, she saw defendant and codefendants run through the parking lot and across the street.  Morris got up and hopped around the corner and to her front door where her daughter let her in the house.  Morris saw Baker, who had also been shot "up by her butt," lying on the floor.  An ambulance subsequently took Morris and Baker to the hospital where they stayed until approximately 6 a.m.  Morris had an x-ray taken of her foot which revealed no fractures or dislocations.   

Various photographs were identified and introduced into evidence depicting the scene of the shooting.  One photograph showed a bullet hole in the top half of the back door of the rowhouse around a person's waist level.  Another photograph showed a gym shoe with a hole in it, which Baker identified as Morris' gym shoe.  

Defendant's written statement, taken by the police after defendant had been arrested, was introduced into evidence by stipulation of the parties.  The statement revealed that at the time of the shooting, defendant was 16 years old and a member of the Conservative Vice Lords street gang.  At approximately 2:30 a.m. on March 25, 1998, defendant and codefendants, also Vice Lords, were in the area of 133rd and Langley because they knew that rival members of the Black Disciples street gang would be there.  Defendant stated that he and codefendants were carrying loaded handguns and that they were "looking for" Black Disciples who had shot at defendant and other Vice Lords earlier that night.  

Defendant's written statement further stated that when defendant approached 133rd and Langley, he saw two Black Disciples, whom defendant knew as "J.J." and "Woo Woo," sitting on a porch with two women whom defendant did not know.  Defendant kept walking toward the porch with codefendants, and when defendant was approximately 10 feet away, J.J. and the two women got up and started to run.  At this point, defendant was "right behind" one of the women.  Defendant pulled his gun in an attempt to shoot J.J.,  pointing the gun in the direction of J.J. and the women, and fired it three times.  After defendant fired at J.J., Woo Woo shot back.  Codefendants then started shooting in the direction of J.J., Woo Woo and the women, and defendant ran to "Block 17."  Defendant kept the gun overnight, and then gave it to someone named "Reno" the next day.   

Defendant presented no evidence other than his written statement.  The trial court subsequently found defendant guilty of both counts each of attempted first degree murder, aggravated battery with a firearm, armed violence and aggravated battery based on great bodily harm.  Defendant was sentenced to 16 years' imprisonment on each count of attempted first degree murder and armed violence, to be served concurrently.  The counts for aggravated battery with a firearm and aggravated battery merged into the attempted murder and armed violence counts for which sentence was imposed.  This appeal followed. 

(Nonpublishable material under Supreme Court rule 23 omitted.)

Defendant Contends that his sentence for armed violence was disproportionate to the penalties imposed for the predicate offense of aggravated battery and, therefore, the armed violence charge and his ultimate conviction for that offense violated the proportionate penalties clause of the Illinois Constitution.  (Ill. Const. 1970, art. I).  The State contends that defendant’s conviction for armed violence predicated on aggravated battery causing great bodily harm was proper because the statutes defendant attempts to compare as having disproportionate penalties do not require proof of substantively identical elements, but rather, both armed violence and aggravated battery have different elements.  The State argues that because each statute governing armed violence and aggravated battery requires an element not found in the other, they are merely different punishments for separate and distinct offenses based on the commission of the same acts, which do not offend the Illinois constitution.

The Constitution of Illinois provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws”  (Ill. Const. 1970, art. I, §11), and that “[a]ll penalties shall be determined both according to the seriousness of the offense with the objective of restoring the citizen to useful citizenship”  (Ill. Const. 1970, art. I, §2).  While the legislature has the power to declare and define conduct constituting a crime, and to determine the nature and extent of punishment for a crime committed, 
the preceding constitutional provisions mandate penalties which are proportionate to the offenses and require the legislature, in defining crimes and their penalties, to consider the constitutional goal of providing penalties according to the seriousness of the offense.  
People v. Lee
, 167 Ill. 2d 140, 144-45, 656 N.E.2d 1065 (1995); 
People v. Christy
, 139 Ill. 2d 172, 177, 564 N.E.2d 770 (1990)
.  

On appeal, the "constitutionally required task" of a reviewing court is to examine a sentencing scheme and determine whether it provides a proportionate penalty for the offense at issue.  
People v. Lewis
, 175 Ill. 2d 412, 422, 677 N.E.2d 830 (1997).  The general practice of comparing different offenses and their respective penalties is an accepted part of a reviewing court’s proportionality review.  
Lewis
, 175 Ill. 2d at 420.  Interference with legislative judgment is justified only where the designated punishment is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.  Because courts recognize that the legislature is institutionally more capable of determining the seriousness of offenses, they are reluctant to invalidate penalties prescribed by the legislature.  
Lee
, 167 Ill. 2d at 145.

In the present case, the following statutes were applicable to the charges against defendant for aggravated battery, aggravated battery with a firearm and armed violence.  Section 2--4 of the Criminal Code provided:

"Aggravated Battery.

(a) A person who, in committing a battery,
(footnote: 1) intentionally or knowingly causes 
great bodily harm
, or permanent disability or disfigurement commits aggravated battery."  (Emphasis added).  720 ILCS 5/12--4(a) (West 1993).

Aggravated battery is a Class 3 felony for which the penalty is two to five years' imprisonment.  730 ILCS 5/5--8--1 (West 1994).  Section 12--402 provided:

"Aggravated Battery with a firearm.

(a) A person commits aggravated battery with a firearm when he, in committing a battery, knowingly or intentionally by means of the 
discharging of a firearm
 (1) causes 
any injury
 to another person, ***."  (Emphasis added.)  720 ILCS 5/12--4.2(a) (West 1993).

Aggravated battery with a firearm is a Class X felony for which the penalty is imprisonment from 6 to 30 years.  730 ILCS 5/5--8--1 (West 1994).  Section 33A--

2 provided: 

"Armed violence-Elements of the offense.

A person commits armed violence when, while
 
armed with a dangerous weapon
, he commits any felony defined by Illinois Law."  (Emphasis added.)  720 ILCS 5/33A--2 (West 1993).

A person is considered armed with a dangerous weapon when he or she carries on or about his or her person or is otherwise armed with a Category I weapon.  A Category I weapon includes a handgun or any other firearm small enough to be concealed upon the person.  720 ILCS 5/33A--1(a)(b) (West 1993).  Violation of the armed violence offense while armed with a Category I weapon is a Class X felony for which a defendant shall be sentenced to a minimum of 15 years' imprisonment.  720 ILCS 5/33A--3(a) (West 1993).

Defendant argues that under this statutory scheme, committing a battery while armed with a handgun also constitutes the separate offenses of aggravated battery with a firearm and armed violence.  Therefore, defendant maintains that he 
was charged and convicted with the substantively identical offenses of armed violence and aggravated battery with a firearm, which are not logically punishable with disparate penalties.

The State argues that while the cases relied upon by defendant, 
People v. Christy
, 139 Ill. 2d 172, 177, 564 N.E.2d 770 (1990)
 and 
People v. Lewis
, 175 Ill. 2d 412, 422, 677 N.E.2d 830 (1997), provide "persuasive authority in reviewing the proportionality of penalties of identical offenses," they are "not particularly relevant" in the present case where the offenses are not identical.  The State maintains that despite dealing with "slightly similar conduct," the offenses in this case each contain elements that the other does not.  

Defendant counters that the "technical distinction" argued by the State that the charge of aggravated battery with a firearm requires the 
discharge
 of a firearm, whereas the charge of armed violence predicated on aggravated battery, of which great bodily harm is an element, can be sustained with only the 
possession
 of a firearm, is "an entirely sophistic distinction."  Defendant argues that regardless of how a "different defendant" might be properly charged under "different circumstances," because he was convicted of armed violence for causing great bodily harm by discharging a firearm and not just possessing one, his convictions violate the proportionate penalties clause.  

In 
Christy
, the defendant abducted two teenage boys from a campsite and took them to a storage unit where he forced them to undress and repeatedly threatened to kill them with a knife.  
The defendant was charged with armed violence, kidnapping and aggravated criminal sexual abuse, and found guilty of armed violence predicated on kidnapping with a Category I weapon, and one count of kidnapping.  This court affirmed the 
defendant's conviction for kidnapping.  On appeal to 
our supreme court, the court
 held that the penalties were “unconstitutionally disproportionate, because aggravated kidnapping is a more serious offense than the lesser included offense of kidnapping; yet, when armed violence is predicated on kidnapping with a category I weapon, kidnapping is, in effect, enhanced to a Class X felony and is punished more severely than aggravated kidnapping.”  
Christy
, 139 Ill. 2d at 173-75, citing 
People v. Christy
, 188 Ill. App. 3d 330, 332, 544 N.E.2d 88 (1989).  The supreme court examined the relevant statutory provisions and found that kidnapping while armed with a knife having a three-inch blade constituted 
both
 aggravated kidnapping and armed violence.  (Emphasis in original.)  
Christy
, 139 Ill. 2d at 181.  Because the elements constituting both crimes were “identical,” the court held that “common sense and sound logic would seemingly dictate that their penalties be identical.”  
Christy
, 139 Ill. 2d at 181.  However, because aggravated kidnapping was a Class 1 felony punishable by 4 to 15 years' imprisonment, while armed violence was a Class X felony punishable by 6 to 30 years' imprisonment, the court held that the penalties for the two crimes were unconstitutionally disproportionate.  
Christy
, 139 Ill. 2d at 181.

In 
Lewis
, the defendant was charged with one count of robbery, one count of armed violence predicated on robbery committed with a category I weapon and one count of armed robbery.  
Lewis
, 175 Ill. 2d at 414.  Relying on the 
Christy
 holding, the supreme court in 
Lewis
 examined the relationship between the three statutory offenses.  The court noted that robbery was defined as the taking of property, except a motor vehicle, from the person or presence of another by the use of force or by threatening the imminent use of force; armed robbery was defined as the commission of a robbery while being armed with a dangerous weapon (punishable by imprisonment from 6 to 30 years); and armed violence was defined as the commission of any felony while armed with a dangerous weapon (punishable by imprisonment from 15 to 30 years).  The 
Lewis
 court found that because the offense of armed violence predicated on robbery committed with a category I weapon and the offense of armed robbery contained identical elements which were illogically punished with disparate penalties, the penalty for armed violence predicated on robbery committed with a category I weapon violated the proportionate penalties clause.  
Lewis
, 175 Ill. 2d at 418.  

We agree with the State that 
Christy
 and 
Lewis
 are distinguishable from the case at bar.  Based on a plain reading of the relevant statutes in this case, armed violence predicated on aggravated battery and aggravated battery with a firearm are not substantively identical offenses because they require different and/or additional elements.  Specifically, aggravated battery with a firearm does not require the intentional or knowing infliction of great bodily harm as does the offense of armed violence predicated on aggravated battery.  Aggravated battery with a firearm also has the additional and 
different
 requirement of the discharge of a firearm, whereas armed violence does 
not
 require proof of the discharge of a firearm, but only possession of the firearm on the person of the defendant.  Moreover, a different level of harm is required under each offense.  While a defendant can be prosecuted for aggravated battery with a firearm for causing "
any injury to another person," armed violence requires that a defendant cause "great bodily harm" or "permanent disability" to another person before he can be prosecuted for the offense of armed violence predicated on aggravated battery pursuant to the Criminal Code.

  
   We also find that the case at bar is more similar to the facts of 
People v. Townsend
, 275 Ill. App. 3d 413, 654 N.E.2d 1096 (1995).  In 
Townsend
, the defendant contended that the aggravated discharge of a firearm statute under which he was convicted created an unconstitutionally disproportionate penalty because that statute and the aggravated assault statute required virtually the same elements, yet were punished differently.  The 
Townsend
 court disagreed because it found that the two offenses were distinct since "only aggravated discharge of a firearm requires the firearm to be discharged in the direction of another person, and only aggravated assault requires awareness of the offender's conduct."  
Townsend
, 275 Ill. App. 3d at 418.  The 
Townsend
 court therefore held that because these two offenses are distinct offenses, the legislature is fully within its power to punish them separately.  
Townsend
, 275 Ill. App. 3d at 418.  

Similarly, the ranges of punishment for the offenses in the present case are not unconstitutionally disproportionate so as to justify interference with the legislature's judgment.  Unlike the facts in 
Christy
, where the court found that aggravated kidnapping was a 
Class 1 felony
 punishable from 4 to 15 years' imprisonment, while armed violence was a 
Class X felony
 punishable from 6 to 30 years' imprisonment, we find that the offenses of armed violence (a Class X felony punishable with a minimum of 15 years) and aggravated battery with a firearm (a Class X felony punishable from 6 to 30 years) do not result in such disproportionate penalties.  Therefore, defendant's conclusory assertion that in the present case the disproportionality between the penalties of armed violence predicated on aggravated battery and aggravated battery with a firearm is "even greater" than in either 
Christy
 and 
Lewis
, and that the "distinction" between the discharge of a firearm and the possession of a firearm is merely "technical" and "entirely sophistic," is unsupported by either the facts here or the relevant authority.
  Therefore, 
Christy
 and 
Lewis
 do not support defendant's argument.

Defendant next argues that even if the statutory elements of the offenses of armed violence predicated on aggravated battery and aggravated battery with a firearm are materially different, 
People v. Wisslead
, 94 Ill. 2d 190, 446 N.E.2d 512 (1983), and 
People v. Wade
, 131 Ill. 2d 370, 546 N.E.2d 553 (1989), support his argument that defendant's charge of armed violence predicated on aggravated battery of which great bodily harm is an element, violated the proportionate penalties clause because "it is clear that the offense of aggravated battery with a firearm is a more serious violation than aggravated battery in which great bodily harm is inflicted."

In 
Wisslead
, the defendant was charged with unlawful restraint and armed violence based on the underlying felony of unlawful restraint.  The 
Wisslead
 court examined the different penalties available for various related statutory offenses, and found that the penalty for armed violence predicated on unlawful restraint was not proportionate to the penalties for aggravated kidnapping and forcible detention.  The court reasoned that from the clear language of the statutes involved, unlawful restraint (classified by the legislature as a Class 4 felony) was a less serious offense than kidnapping (classified as a Class 2 felony), as evidenced by the type of conduct involved in the commission of each of the crimes and the penalties prescribed.  Unlawful restraint required an illegal detention while kidnaping involved secret confinement, deceit or enticement, or force or threat of imminent force.  However, when the presence of a category I weapon was added to the elements of either of those offenses, they could be prosecuted as armed violence predicated on unlawful restraint and aggravated kidnapping, respectively.  One who kidnaps another while armed with a dangerous weapon could be prosecuted under the aggravated kidnapping statute and would be subject to a lesser penalty than one prosecuted on similar facts for armed violence based on unlawful restraint.  The court reasoned that because each offense was enhanced by the identical additional element of a category I weapon, the lesser offense of unlawful restraint should not become a graver offense than kidnapping.  
Wisslead
, 94 Ill. 2d at 193-95.

Defendant here therefore argues that because aggravated battery is a lesser offense than aggravated battery with a firearm and armed violence, aggravated battery with the possession of a category I weapon should not yield a greater penalty than the greater offense of aggravated battery with a firearm.  However, in 
Wisslead
, the less serious offense of unlawful restraint, when enhanced by a category I weapon, amounted to armed violence based on unlawful restraint (a Class X felony) while 
at the same time could 
also have been prosecuted as aggravated kidnapping (a Class 1 felony).  

In 
Wade
, the defendant was charged with armed violence predicated on the felony of intimidation and attempted armed robbery.  The trial court entered judgment on the more serious charge of armed violence.  The issue before the court in 
Wade
 was whether the offense of intimidation properly served as the predicate felony for the offense of armed violence.  The 
Wade
 court examined the relevant statutes and found that intimidation and attempted robbery were both Class 3 felonies: attempted armed robbery was a Class 1 felony; armed violence was committed by a person when that person committed any felony while armed with a dangerous weapon; and commission of armed violence while armed with a category I weapon was a Class X felony.  The 
Wade
 court concluded, therefore, that the commission of intimidation while armed with a category I weapon constituted the offense of armed violence and was a Class X felony, and commission of attempted robbery while armed with a similar weapon constituted a Class 1 felony of attempted armed robbery.   

Relying on 
Wisslead
, the defendant in 
Wade
 argued that the availability of the separate offenses of armed violence and attempted armed robbery based on the same acts and resulting in different punishments created disproportionate sentencing.  
Wade
, 131 Ill. 2d at 376-77.  The 
Wade
 court held that the defendant's reliance on 
Wisslead
 was misplaced because the sentencing scheme in that case punished the less serious offense of unlawful restraint more severely than the more serious offense of kidnapping when the identical enhancing element of a handgun was added to each.  However in 
Wade
, the unenhanced offenses of attempted robbery and intimidation were both Class 3 felonies.  Intimidation, therefore, was not considered a less serious offense than attempted robbery, nor could the commission of intimidation while armed be a less serious offense than attempted armed robbery.  The court held that the defendant's claim--reduced to the argument that identically classified offenses may not be enhanced by the same circumstance to offenses of different classifications--was unfounded.  
Wade
, 131 Ill. 2d at 378-80.

The 
Wade
 court also noted that in the aggravated kidnapping and forcible detention statutes at issue in 
Wisslead
, the legislature expressly adopted the definition of "dangerous weapon" in the armed violence provisions in providing for the enhanced offenses, but no such provision was made for the commission of unlawful restraint while similarly armed.  
Therefore, intimidation could not be considered a less serious offense than attempted armed robbery, nor could the commission of intimidation while armed be considered a less serious offense than attempted armed robbery.  
Wade
, 131 Ill. 2d at 379.

Wade
 is distinguishable from the case at bar because the issue in that case was whether the statutes permitting enhancement of 
both
 the Class 3 felonies of attempted robbery and intimidation to the Class 1 offense of armed robbery and the Class X offense of armed violence when the presence of a weapon was added, was disproportionate.  In the present case, while the offense of aggravated battery based on great bodily harm was enhanced to armed violence due to the presence of a category I weapon, the offense of aggravated battery with a firearm was not similarly enhanced.  Instead, it contained the element of discharge of a firearm by its own definition.  In the case at bar, the two offenses that defendant argues are disproportionate--armed violence predicated on aggravated battery and aggravated battery with a firearm--are both Class X felonies.  Therefore, as previously discussed, we find that the penalties prescribed for these offenses are not so wholly disproportionate as to shock the moral sense of the community
.  
Lee
, 167 Ill. 2d at 145.  Moreover, a defendant prosecuted under the two offenses at issue in this case would have to perform different and/or additional acts, unlike the 
Wisslead
 defendant who could have been prosecuted disproportionately under either offense involved there under similar facts.

We further observe that even if, as defendant argues, the legislature intended aggravated battery with a firearm to be a more serious violation than aggravated battery based on great bodily harm, defendant cites to no additional authority for his more specific proposition that aggravated battery based on great bodily harm, when coupled with the possession of a weapon, is a lesser offense than aggravated battery with a firearm, which requires the actual discharge of the gun.  As our supreme court noted in 
Lee
, after holding that the aggravated battery with a firearm statute withstood the defendant's constitutional challenges, there are several factors the legislature may take into consideration when determining the seriousness of a crime and the punishment for it.  For example, the legislature may consider the frequency of the crime and the high risk of bodily harm associated with it.  The legislature may also perceive a need to enact a more stringent penalty in order to halt an increase in the commission of a particular crime.  
Lee
, 167 Ill. 2d at 146-47.  Because the authority defendant relies upon is unpersuasive in support of his argument that aggravated battery with a firearm is a "more serious" offense than aggravated battery based on great bodily harm, we find no reason to interfere with the sentencing schemes developed by the legislature in relation to the offenses at issue in the present case.  See 
Wade
, 131 Ill. 2d at 380.  Accordingly, we hold that defendant's constitutional rights have not been violated and that his convictions for armed violence and aggravated battery with a firearm were proper.

(Nonpublishable material under Supreme Court Rule 23 omitted.)

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LEAVITT, P.J., and CAHILL, J., concur.

FOOTNOTES
1:
The underlying predicate offense for all the offenses defendant was charged with was battery, with which defendant was not charged.  The statute defines the offense of battery as the intentional or knowing causing of bodily harm, without legal justification, and by any means, to any individual.  720 ILCS 5/12--3 (West 1993).