In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-2617

MARTIZE R. DELLINGER,

*Petitioner-Appellant,*

v.

EDWARD R. BOWEN, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1691—**Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 7, 2001—DECIDED AUGUST 19, 2002

Before FLAUM, *Chief Judge,* and MANION and DIANE P. WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Martize Dellinger was convicted in Illinois state court of two counts of attempted murder, two counts of armed violence, two counts of aggravated battery with a firearm, and two counts of aggravated battery. After unsuccessfully pursuing direct appeals and post-conviction challenges within the state court system, Dellinger filed a petition for habeas corpus relief in federal district court pursuant to 28 U.S.C. § 2254. The district court denied his petition for habeas relief, but granted Dellinger a certificate of appealability on several issues.

Dellinger raises those issues on appeal to this court, and we affirm.

## I.

In August 1995, at about 2:30 a.m., Martize Dellinger, Rhamal Powell, and Kareem Muhammad shot into a group of people running away from them who were apparently rival gang members and their girlfriends. Dellinger, Powell and Muhammad are all associated with the Vice Lords street gang. Two of the women, Patricia Baker and Cherie Morris, were shot and suffered relatively minor injuries. At trial, both women testified that they were sitting on Ms. Baker's back porch with several friends when three men approached on foot and pulled out guns. When the women and their friends began to run, the men started shooting. Ms. Baker was shot in the buttocks, and Ms. Morris in the foot. Both were taken to a hospital, treated and released around 6:00 a.m. Both women identified Muhammad, Powell and Dellinger as the shooters.

These three men were tried in a separate, simultaneous bench trial for attempted murder and lesser crimes. At trial, the prosecution introduced, by stipulation, statements by Powell and Dellinger.[1] In Dellinger's statement, he stated that he was 17 years old and a member of the Vice Lords street gang. He stated that his car had been shot up by a rival gang, and that on August 25th, he, Powell and Muhammad went looking for the rival gang members. Dellinger claimed that when they saw the people on the porch, the other defendants started shooting. He stated that "he didn't want to shoot but he raised his gun and

---

[1] Each statement was offered only against the defendant who gave the statement.

shot two times towards where the two guys [from the porch] had ran." Dellinger did not call any witnesses in his defense. In closing, Dellinger's public defender argued that the evidence was insufficient to prove an intent to kill, as required for attempted murder, or to prove that he had caused "great bodily harm," to support the underlying felony of aggravated battery (and thus, armed violence).[2]

The trial judge found each of the defendants guilty and, on October 3, 1996, he sentenced Dellinger, Powell, and Muhammad to concurrent sentences of 19 years each on the attempted murder and armed violence charges. The other convictions merged in the judgment. On direct appeal Dellinger, now represented by a different assistant public defender, argued that the evidence was insufficient to convict him of attempted murder, that he did not cause "great bodily harm" as required for aggravated battery, and that the convictions for armed violence and aggravated battery arose from the same act as the attempted murder and should be vacated under Illinois law as violating the "one act, one crime" rule. On September 30, 1997, the Illinois Appellate Court rejected Dellinger's arguments, and affirmed his convictions. *People v. Dillinger* [sic], No. 96-3640 (Ill.App.Ct. Sept. 30, 1997) (unreported order). With respect to the sufficiency of the evidence, the court concluded that the act of firing a gun was sufficient to support a finding of an intent to kill, and that under Illinois law a gunshot wound was "great bodily harm" sufficient to support the underlying felony of aggravated battery (and thus, armed violence). After rejecting Dellinger's "one act, one crime" argument, the Illinois Ap-

---

[2]   Aggravated battery is a lesser-included offense of armed violence. *See* 720 ILCS 5/33A-2; 720 ILCS 5/12-4(a).

pellate Court further concluded that the trial court was required to impose consecutive sentences under 730 ILCS 5/5-8-4(a).[3] The Illinois Appellate Court concluded that "the shooting of [two] women was sufficient to establish great bodily harm, and . . . it also was sufficient to meet the severe bodily injury criterion set forth in [730 ILCS 5/5-8-4(a)]. Defendant's sentences for attempted murder and armed violence must be served consecutively." *Dillinger* [sic], slip op. at p.8. The Appellate Court then vacated Dellinger's sentence and remanded the case for resentencing in accordance with its decision.

In October 1997, Assistant Public Defender Robert Drizin wrote Dellinger, advising him of the Appellate Court's ruling imposing consecutive sentences and informing him that an assistant public defender would represent him on resentencing. Furthermore, the letter informed Dellinger that if he wanted to file a *pro se* petition for leave to appeal the Illinois Appellate Court's decision, he could do so within 21 days of the Appellate Court's decision. Dellinger sought leave to appeal *pro se* to the Illinois Supreme Court twice thereafter (although he did not raise the issue of consecutive sentencing either time), but both petitions were denied by the Illinois Supreme Court as untimely.

At resentencing, Dellinger was represented by another assistant public defender, Susan R. Smith, but she did not

---

[3] At that time, the statute provided, in relevant part, "[t]he court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was . . . a Class X or Class 1 felony and the defendant inflicted severe bodily injury . . . in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5-8-4(a) (West 1997).

challenge the court's imposition of two consecutive 15-year sentences, for a new total of 30 years. Dellinger then began a direct appeal of his new sentence, this time represented by Assistant Public Defender Thomas Finegan. Once again he did not challenge the issue of consecutive sentences, nor did he claim Smith had been ineffective in failing to challenge that ruling. Instead, his sole challenge involved the constitutionality of Illinois' "Truth-in-Sentencing" statute, 730 ILCS 5/3-6-3(a)(2)(ii), which limited good-time credit to 4.5 days for each month of sentence.[4] In January 1999, the Illinois Supreme Court declared the statute unconstitutional, *People v. Reedy*, 708 N.E.2d 1114, 1122 (Ill. 1999), and in February 1999, the Illinois Appellate Court applied this ruling to Dellinger's case, concluding that he was eligible for one day of good conduct credit for each day served. *People v. Dellinger*, No. 1-98-0448 (Ill. App. Ct. Feb. 22, 1999) (unpublished summary order).

In the meantime, Dellinger's co-defendant, Powell, who was represented by appointed counsel, had also appealed his initial convictions. On June 30, 1998, the Appellate Court affirmed his convictions on all counts, but, unlike its action in Dellinger's case, did not remand the case for consecutive sentencing under 730 ILCS 5/5-8-4(a).

---

[4] In August 1998, Finegan wrote to Dellinger, then awaiting his second direct appeal, advising him that "in your particular case, appealing your convictions was not a smart idea since the Appellate Court would not have known about your incorrect concurrent sentences if you had not appealed the convictions. I do not know who wrote your appeal—perhaps the attorney had discussed this possible outcome with you." He then indicated that the only argument he could pursue on appeal was the Truth-in-Sentencing Act issue.

*People v. Powell,* 701 N.E.2d 68 (Ill.App.Ct. 1998).[5] Of course, Powell's decision was rendered by a different panel of judges than the one that decided Dellinger's appeal.

Meanwhile, Dellinger filed a *pro se* petition for post-conviction relief in Illinois state court, raising several issues including the sufficiency of the evidence. However, he did not raise the consecutive sentencing issue at this point either, nor did he claim that Smith or Finegan were ineffective in failing to do so themselves. The Circuit Court of Cook County denied this petition on August 14, 1998. The record does not indicate whether he appealed that determination.

In March 1999, Dellinger filed a *pro se* petition for habeas relief in federal district court. His present counsel was appointed for him at that time, and his attorney filed an amended petition raising the following issues: (1) whether his Fourteenth Amendment rights were violated when the Illinois Appellate Court imposed consecutive sentences, and whether his Sixth Amendment rights were violated when his counsel failed to appeal that ruling, and (2) whether there was sufficient evidence to support a finding of guilt for his convictions. Dellinger's counsel later filed a supplemental petition, raising for the first time the fact of Powell's disparate sentencing by the Illinois Appellate Court. Dellinger argued that the disparity between his and Powell's sentences violated the Equal Protection Clause of the Fourteenth Amendment, and that his counsel was ineffective under the Sixth Amendment for failing to raise this issue as well.

The district court denied in its entirety the petition, as amended and supplemented. *Dellinger v. Haws,* 2001 WL

---

[5]   According to Dellinger, Powell will be eligible for release after 8 years, whereas he is subject to confinement for at least 15 years.

184888 (N.D. Ill. Feb. 20, 2001). Dellinger moved to alter or amend the judgment under Rule 59(e), claiming that the district court had not specifically addressed the equal protection arguments raised in his supplemental petition. The district court denied Dellinger's motion to amend in an unpublished order, rejecting Dellinger's disparate sentence argument. Dellinger then filed a notice of appeal and requested a certificate of appealability, which the district court granted on Dellinger's Equal Protection and ineffective assistance of counsel claims, as well as on the question of whether Dellinger had procedurally defaulted those claims. Dellinger appeals.

## II.

In reviewing the district court's decision to deny habeas corpus relief, we review issues of law *de novo* and issues of fact for clear error. *See, e.g., Todd v. Schomig*, 283 F.3d 842, 848 (7th Cir. 2002). A defendant may only obtain habeas relief from a state court conviction where he establishes that the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d).

In recognition of federal-state comity, a petitioner seeking federal habeas relief must establish that he presented "fully and fairly his federal claims to the state courts . . . ." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). Fair presentment "requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.*

(citations omitted). Failure to do so "constitutes a proce-dural default," *id.* at 737, which bars federal review un-less the petitioner demonstrates cause for the default and actual prejudice as a result of the failure, or demonstrates that the failure to consider the claims will result in a funda-mental miscarriage of justice. *See Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir.1999).

Given these principles governing a request for habeas corpus relief, we now turn to Dellinger's claims.

**A. Due Process Claim**

Dellinger first claims that he was denied due process under the Fourteenth Amendment when he was sentenced to consecutive sentences under Illinois law. Specifically, Dellinger argues that the Illinois Appellate Court erred in concluding that he had inflicted "severe bodily injury" under 730 ILCS 5/5-8-4(a). He claims that the Illinois Appellate Court improperly equated "severe bodily injury" with the "great bodily harm" element of aggravated battery. *See* 720 ILCS 5/12-4(a). In his request for a certificate of appealability, Dellinger framed this argument in terms of the Equal Protection Clause of the Fourteenth Amend-ment, whereas in his appellate brief, he claims a violation of the Due Process Clause. It does not matter, however, because as we explain, we conclude that he has not pre-sented a claim cognizable on a petition for federal habeas relief.

Federal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, *see* 28 U.S.C. § 2254(a), and is unavailable to remedy errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions"). Thus, an error in the interpretation of the Illinois aggravated battery statute, or the application of state sentencing rules, does not present a cognizable claim for federal habeas relief. *See, e.g., Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998). Thus, to the extent that Dellinger's arguments are based on an incorrect application of Illinois law, the district court correctly denied his claim under the standard set forth by 28 U.S.C. § 2254(d).

For the first time on appeal, however, Dellinger characterizes his claim as falling under the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), where the Court held that any fact other than a prior conviction which increases the maximum statutory penalty for a crime must be submitted to a jury, and proven beyond a reasonable doubt. *Id.* at 490. Without a finding of the infliction of severe bodily injury, Illinois law provides that a defendant must receive concurrent sentences. *See* 730 ILCS 5/5-8-4(a). Dellinger's indictment did not contain the charge that he had inflicted "severe bodily injury." Nor did the trier of fact (the judge) make a finding of "severe bodily injury." Thus, Dellinger argues, since he was sentenced to a greater penalty (consecutive sentences) without the requisite charges and findings, his *Apprendi* rights were violated. The State responds that the Illinois Appellate Court properly made the requisite finding by equating "great bodily harm" with "severe bodily injury," that Dellinger waived an *Apprendi* claim by failing to raise it below, and that *Apprendi* does not apply retroactively.[6]

---

[6] Additionally, the State notes that the Illinois Supreme Court rejected Dellinger's argument, holding that consecutive sentences do not constitute a single sentence for one offense and "the

(continued...)

Habeas appellants are required to obtain a certificate of appealability in order to preserve issues for appeal. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22. *See also Rodriguez v. United States*, 286 F.3d 972, 978 (7th Cir. 2002). Dellinger did not raise this claim in his certificate of appealability, nor has he requested us to expand the certificate to include an *Apprendi* claim. However, this is not necessarily fatal to his claim. We have previously held that "if a certificate is granted as to certain issues, but the petitioner is later able to make a substantial showing of the denial of a constitutional right as to a different issue, we shall amend the certificate to include such a claim." *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001). This is applicable even where the petitioner does not specifically ask us to expand the certificate, but also "when a party implicitly makes such a request by simply including issues in its briefs that were not specified in the certificate." *Id.*

Therefore, in order to expand the certificate of appealability to include the *Apprendi* issue, Dellinger must still make a substantial showing that the Illinois court's sentence denied his constitutional rights. 28 U.S.C. § 2253(c); *Rodriguez*, 286 F.3d at 978. He cannot make such a showing. For *Apprendi* to apply to his claim, it must be applied retroactively. We recently held that *Apprendi*

---

[6] (...continued)
application by a judge of the factors in § 5-8-4(a) determines only the manner in which the defendant will serve his sentences for multiple offenses." *People v. Carney*, 752 N.E.2d 1137, 1145 (Ill. 2001). Therefore, where the defendant is not sentenced in excess of the statutory maximum for each separate offense (whether served concurrently or consecutively), there is no *Apprendi* violation. *Id.*

is not retroactive and thus "does not disturb sentences that became final before June 26, 2000, the date of its release." *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002). Dellinger's sentence became final well before this date, and therefore we reject his petition for habeas relief based on a violation of his rights under the Fourteenth Amendment based on *Apprendi*.

Finally, Dellinger suggests that his Fourteenth Amendment due process rights were violated because his sentence was improperly vacated by the Appellate Court on its own initiative, thus effectively penalizing him for taking an appeal. This issue was not included in Dellinger's certificate of appealability either. However, we note that the Illinois Appellate Court does not appear to have vacated his sentence on its own, but rather addressed the issue at the suggestion of the State.[7] In any case, Dellinger's argument is essentially a recharacterization of his contention that the Illinois Appellate Court erred in its application of 730 ILCS 5/5-8-4(a). Thus, he has made no showing that his constitutional rights were violated, and his Fourteenth Amendment argument on this issue fails as well.

---

[7]  In rendering its decision, the court stated that "the State argues that under section 5-8-4(a) . . ., the trial court should have imposed consecutive rather than concurrent sentences." Additionally, the record contains a portion of the State's appellate brief in which the State argued that Dellinger's case should be remanded for resentencing because the trial court improperly imposed a concurrent sentence. In any case, it does not matter, as Illinois courts may raise such issues *sua sponte. See People v. Arna*, 658 N.E.2d 445, 448 (Ill. 1995) (rejecting defendant's challenge that the appellate court lacked the authority to impose consecutive sentences *sua sponte*).

## B.  Ineffective Assistance of Counsel

Next, we address Dellinger's argument that he received
ineffective assistance of counsel in violation of the Sixth
Amendment. He points to several specific instances of
ineffective assistance, including his counsel's failure to
challenge the imposition of the consecutive sentences,
failure to discuss with him an appeal of the consecutive
sentence issue, and failure to raise the issue regarding
the disparity in sentence received by his co-defendant,
Powell. The district court concluded that Dellinger had
procedurally defaulted these claims by failing to raise them
in state court (either on direct appeal or in his post-convic-
tion proceeding) and that he had not established cause
sufficient to justify the default, other than his youth and
ignorance, which are insufficient.[8]

Dellinger admits that he failed to raise the ineffective
assistance of counsel claim in state court, on direct appeal
or in post-conviction relief, but argues he established
"cause" sufficient to justify that default and that he suffered
prejudice as a result of the violation. We first turn to
whether he established cause for the default. The heart of
Dellinger's argument is that he received sub-standard
assistance from the public defender,[9] and that, from June
1997 forward, he was left on his own. He pleads that he
was a young, uneducated person without the capacity or
ability to recognize possible grounds for relief, including

---

[8] The district court also concluded that Dellinger failed to
establish prejudice because he had not shown that a challenge to
the consecutive sentences would have succeeded.

[9] Dellinger points out that one assistant public defender advised
him to file his own petition for leave to appeal to the Illinois
Supreme Court, and another scolded him for appealing his con-
viction in the first place.

his own attorneys' ineffectiveness. Essentially, his "cause" for failing to raise this claim in the state courts is three-fold: that he is young, uneducated and that he had ineffective counsel. The Supreme Court has defined cause sufficient to excuse procedural default as "some objective factor external to the defense" which precludes petitioner's ability to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1996). We have held that youth and lack of education do not constitute the type of external impediment sufficient to excuse a procedural default. *See, e.g., Henderson v. Cohn*, 919 F.2d 1270, 1272-73 (7th Cir. 1990) (illiteracy and limited education do not constitute cause).

Likewise, the fact that Dellinger may have had ineffective assistance of counsel does not automatically excuse him from raising an ineffective assistance claim in state court. In *Edwards v. Carpenter*, 529 U.S. 446 (2000), the Supreme Court held that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim. And we held in *Carrier* that the principles of comity and federalism that underlie our longstanding exhaustion doctrine . . . require *that* constitutional claim, like others, to be first raised in state court." *Id.* at 451-52. In other words, the claim of ineffective assistance must be raised in state court before it can suffice on federal habeas relief as "cause" to excuse the default of another claim (even if that other claim is also ineffective assistance of counsel). If the second claim of ineffective assistance of counsel is itself defaulted, the petitioner will be fully defaulted. *Id.* at 452-54. Dellinger points to no reasons for this second level of default, other than the aforementioned claims of youth and ignorance, which as we have stated are insufficient.

Furthermore, to the extent that Dellinger claims that his ineffective counsel is the "cause" for the second level of default, his claim must fail. Essentially, Dellinger's argument is that his appellate counsel was ineffective, both for failing to challenge the imposition of consecutive sentences and for failing to challenge the effectiveness of his trial counsel on resentencing. Both may have been ineffective, but that is irrelevant for purposes of procedural default because Dellinger also pursued post-conviction relief in state court and failed to present an ineffective assistance claim (of either trial or appellant counsel) at that level. Because he represented himself in that proceeding (and thus cannot blame counsel),[10] and because we have stated that youth and ignorance are insufficient to constitute "cause" for default, his failure to raise an ineffective assistance of counsel claim during the post-conviction proceeding constitutes a full default.[11] Because Dellinger is unable to show cause to excuse his default, we need not reach the issue of whether he could establish prejudice. *See Henderson*, 919 F.2d at 1273.

---

[10] Nor could he do so, even if he had been represented by counsel. Dellinger had no constitutional right to an attorney during post-conviction proceedings, *see Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998), or in petitioning the Illinois Supreme Court for review, *see Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000).

[11] We are aware that all of Dellinger's attorneys were Assistant Public Defenders, but that does not affect our analysis. While an attorney's conflict of interest can be sufficient cause to excuse a procedural default, Dellinger has not argued that there is a conflict and "we will not presume a conflict exists where none is demonstrated." *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994) (no conflict between trial and appellate counsel, where both were employed as public defenders by the State of Illinois, and therefore, no ineffective assistance of counsel).

Absent a showing of cause, a "defaulted claim is re-viewable only where a refusal to consider it would result in a fundamental miscarriage of justice." *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Dellinger suggests that the "fundamental miscarriage of justice" standard applies to excuse his default. However, our case law is clear that this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," Dellinger must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.* While Dellinger claims innocence of "inflicting sentence-doubling injuries," this is a challenge to his sentence, not to the conviction itself. He does not claim that he is an innocent man, wrongly convicted of crimes he did not commit, as defined by *Schlup*. Nor could he, given his own admission at trial that he fired shots at people running away from him. Thus, there has been no "fundamental miscarriage of justice" as defined by United States Supreme Court precedent.

One final note. Dellinger spends a great deal of his appellate brief arguing that his equal protection rights were violated because he was sentenced to consecutive sentences whereas his co-defendant received concur-rent sentences. He claims that it is a violation of equal protection for any court to arbitrarily sentence two co-defendants, who are identically situated, to materially different terms of imprisonment.[12] However, in his cer-tificate of appealability, Dellinger framed this argument only in terms of a violation of his Sixth Amendment right to

---

[12] The district court determined that Dellinger had procedurally defaulted the issue by never raising it in state court.

counsel, which we rejected above. Once again, while he has not requested us to expand his certificate of appealability, if he has made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c), we may do so on our own. However, Dellinger has made no such showing. First, for the same reasons we concluded he had defaulted his ineffective assistance of counsel claims, he has procedurally defaulted this claim as well. Nor has he identified any Supreme Court precedent establishing that it is a violation of the Equal Protection Clause to receive a greater sentence than one's partner in crime. *See* 28 U.S.C. § 2254(d)(1) ("decision . . . was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"). Moreover, in *Holman v. Page*, 95 F.3d 481 (7th Cir. 1996), we rejected a similar contention, holding that, as long as a defendant receives a constitutional sentence, he is not "entitled to assert third parties' rights to better sentencing practices and thereby improve his own lot." *Id.* at 486 (citation omitted). Thus, while Powell may very well have received a windfall from the Illinois Appellate Court, if the Illinois Appellate Court erred in failing to properly apply the Illinois statute in his case, that has no bearing on Dellinger's federal habeas petition. Dellinger is not in state custody pursuant to *Powell's* state court judgment. Instead, in filing his petition, Dellinger was required to demonstrate that he is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). He had to show that his own sentence was an illegal or unconstitutional one. However, as discussed above, to the extent that the Illinois Appellate Court erred in Dellinger's sentencing, it was an error of state law. Accordingly, he has failed to present a cognizable case under Section 2254, and his petition was properly denied.

## III.

For the reasons stated herein, we affirm the decision of the district court.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*