Jason ROWE, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 02–3782.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 6, 2003.

Decided Aug. 22, 2003.

H. Jay Stevens, Indiana Federal Community Defenders, Inc., South Bend, IN, for Petitioner–Appellant.

Andrew B. Baker, Jr., Office of the United States Attorney, Hammond, IN, for Respondent–Appellee.

Before BAUER, POSNER, and KANNE, Circuit Judges.

## ORDER

Police officers arrested Jason Rowe for selling drugs and carrying a gun, and he pleaded guilty without benefit of a plea agreement to possessing with intent to distribute more than 50 grams of crack cocaine, *see* 21 U.S.C. § 841(a)(1), possessing 178 grams of marijuana with intent to distribute, *id.*, and to using a gun in relation to these crimes, *see* 18 U.S.C. § 924(c). The district court sentenced him to a mandatory minimum 10 years' imprisonment for the crack, *see* 21 U.S.C. § 841(b)(1)(B), and a consecutive 5 years' imprisonment for the gun, *see* 18 U.S.C. § 924(c)(1)(A)(i). Despite a statutory five year maximum for the marijuana charge, *see* 21 U.S.C. § 841(b)(1)(D), the district court also sentenced him to 10 years' imprisonment on that count, to run concurrently to the other sentences. Rowe did not appeal directly. Instead, he filed a motion to vacate his convictions and sentences under 28 U.S.C. § 2255, asserting among other claims not relevant here that his trial counsel was ineffective for not consulting with him regarding a direct appeal–contravening *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)–and that counsel's ineffectiveness rendered involuntary his plea of

guilty to the crack charge. The district court denied the motion; Rowe appeals, and we affirm.

Rowe adduced the facts pertinent to his first ineffectiveness claim at a hearing before a magistrate judge. Rowe and his trial counsel took the stand, testifying that the government offered Rowe two plea agreements. Both agreements required Rowe to waive an appeal and, according to him, it was that requirement that led to his rejection of the government's offers. Rowe claimed to have discussed with counsel his desire for an appeal after rejecting each of these agreements and before entering his blind pleas. He admitted that at no time after pleading guilty did he ask counsel to file an appeal, including during the few moments after sentencing when he and his counsel were in the same room.

For his part, Rowe's counsel admitted that before pleading guilty Rowe had expressed some desire to appeal, but asserted that from his recollection the waiver of appeal rights was not why Rowe rejected the government's proposed agreements. Furthermore, after Rowe had received the minimum sentences for both the crack and gun convictions, counsel sent him a letter advising against taking an appeal: there were no viable appellate issues, wrote counsel, and the government might file a cross-appeal resulting in an increased sentence. Counsel did not mention the seemingly illegal sentence for the marijuana. Although Rowe denied receiving this letter, it was not returned to counsel by prison authorities, as undelivered mail to the jail usually was. Despite this letter counsel would have filed a notice of appeal had Rowe asked. Finally, counsel received two letters from Rowe several months after he was sentenced; in neither did Rowe inquire about the status of an appeal.

Formulating his recommendation to the district court, the magistrate judge noted that under *Roe v. Flores–Ortega* the appropriate starting point in evaluating whether counsel was ineffective in not filing an appeal was whether counsel had consulted with Rowe regarding potential appellate issues, and discerned his wishes. *Roe*, 528 U.S. at 478, 120 S.Ct. 1029. The magistrate judge found that counsel had not. He thus continued to *Roe*'s second inquiry: whether the failure to consult constituted deficient performance. *Id.* In considering that question, the magistrate judge acknowledged that counsel had a duty to consult Rowe regarding an appeal if there was "reason to think either (1) that a rational defendant would want to appeal ... or (2) that [Rowe] reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 479, 120 S.Ct. 1029. The magistrate judge seemed to have overlooked the disjunctive "or" in that inquiry, for he ruled only that a rational defendant in Rowe's place would not have wanted to appeal, and failed to rule on whether Rowe himself had reasonably demonstrated an interest in appealing. The magistrate judge then issued a recommendation, which the district court adopted, holding that Rowe never instructed counsel to file an appeal, and that counsel was not ineffective for failing to consult with Rowe regarding his wishes.

Rowe requested a certificate of appealability on this issue, arguing that he "reasonably demonstrated to counsel that he was interested in appealing." *Id.* We granted the CA, but now find Rowe's contention meritless. Although he had expressed interest in an appeal before pleading guilty, Rowe never did so afterwards. As the Supreme Court noted in *Roe*, a guilty plea is highly relevant in determining whether counsel has a duty to consult; the plea severely restricts possible appellate issues, and might signal that a defen-

dant wants an end to the proceeding. *Roe,* 528 U.S. at 480, 120 S.Ct. 1029. Here, counsel reasonably could have concluded that Rowe's intervening guilty pleas reflected a change-of-heart regarding an appeal. Furthermore, the district court, over the government's strenuous objection, gave Rowe a three-point reduction in offense level for acceptance of responsibility, despite the fact that he'd delayed pleading guilty until the day trial was to begin. *See* U.S.S.G. § 3E1.1(b)(2) (three-point reduction reserved for those who save government time by pleading guilty early). The three-point reduction resulted in Rowe receiving, again over the government's objection, the lowest possible sentences for both the crack and gun convictions. Counsel had informed Rowe before sentencing that the best he could hope for was what he got: 15 years. Finally, even when he had an opportunity to do so, Rowe failed to dispel counsel's assumption–reasonable given the course of proceedings–that Rowe would not want to appeal. Given these facts, we do not think that Rowe's expression of a nebulous desire to appeal before his guilty pleas and sentencing hearing reasonably demonstrated to counsel that he wanted an appeal.

Language in *Roe* supports this conclusion. The Court provided the following example of when counsel would *not* have a constitutional duty to consult with a defendant regarding an appeal:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal.

*Roe,* 528 U.S. at 479–80, 120 S.Ct. 1029. The only difference between Rowe's case and the one just described is the illegal sentence for marijuana.

■ That difference might have mattered had Rowe's current counsel argued it. *See Roe,* 528 U.S. at 480, 120 S.Ct. 1029 (noting that a rational defendant might want to appeal, and lawyer has duty to consult, where there are nonfrivolous appellate issues). Then we would have had to address the perhaps difficult issue of whether our holding in *United States v. Gray,* 332 F.3d 491, 493 (7th Cir.2003), eviscerated Rowe's trial counsel's duty to consult with Rowe. In *Gray,* the defendant was sentenced for multiple convictions, and some of his sentences exceeded the statutory maximums for his particular crimes. The defendant asked the court to remand his case for resentencing. Because the defendant had not objected to his sentence in the district court, this court reviewed his claim under the plain error standard. *See id.* at 492 (reversal under plain error standard required only if error (1) was plain, (2) affected substantial rights, and (3) seriously affected the fairness, integrity or public reputation of judicial proceedings.) Applying that standard, the court held that reversal was unnecessary because the total sentence imposed for the multiple convictions did not exceed the combined statutory maximum that could have been achieved by running all the sentences consecutively. Thus, the sentence did not jeopardize the fairness, integrity, or public reputation of the proceedings. *See Gray,* 332 F.3d at 493.

Here, Rowe's trial counsel failed to object in the district court to the illegal sentence for the marijuana conviction, subjecting an appeal of that issue to plain error review. *Gray* would therefore have been major stumbling block for Rowe on

appeal—the maximum total sentence possible for all of his crimes was life in prison, *see* 21 U.S.C. § 841(b)(1)(A), and he got only 15 years. Still, the issue in this appeal is whether counsel had a constitutional duty to consult with Rowe regarding an appeal. It is perhaps odd that counsel's own error could preclude a constitutional duty from arising by making any prospective appeal frivolous—and therefore not one a "rational defendant" would take—but that seems to be the implication of the *Roe* analysis for this case, where Rowe did not demonstrate his desire for an appeal. *Cf. Peguero v. United States*, 526 U.S. 23, 30–31, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (O'Connor, J. concurring) (noting that defense attorneys have duty to consult so that defendants can become aware of errors and make informed choices regarding appeals). But because Rowe does not pursue this argument, we need not explore it further.

■ Disregarding the single-issue CA grant, Rowe on appeal also argues that the district court erred in not holding a hearing on whether trial counsel was ineffective—and Rowe's guilty plea to the crack charge consequently involuntary—because trial counsel failed to disclose to Rowe prior to his plea that an Indiana State Police laboratory report described the alleged crack as just "containing . . . cocaine." Had he known of these reports, contends Rowe, he would not have pleaded guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that to demonstrate that a guilty plea was involuntary because of counsel's ineffectiveness, defendant must show counsel was ineffective and that he or she would not have pleaded guilty but for ineffectiveness). Although we have the power to expand the CA to encompass previously uncertified claims, *Dellinger v. Bowen*, 301 F.3d 758, 765 (7th Cir.2002), we will not do

so where the claim is meritless, as this one is. Indiana's criminal laws do not distinguish between crack cocaine and powder cocaine, as do federal statutes and the federal sentencing guidelines. *See* Ind. Code § 35–48–4–1. Therefore, as we noted in a recent unpublished case, *see United States v. Peterson*, 40 Fed.Appx. 275, 277 (7th Cir.2002), lab reports from Indiana crime labs do not discern between particular forms of cocaine, be it powder, crack, or something exotic like coca paste. The lab report in this case is thus of limited usefulness in determining whether Rowe possessed crack or powder cocaine. Of more usefulness is Rowe's admission, under oath, that he possessed crack. After all, "those who smoke, buy, or sell this stuff are the real experts on what is crack," *see United States v. Bradley*, 165 F.3d 594, 596 (7th Cir.1999), and presumably Rowe did not need a lab report to tell him what it was he was selling.

Furthermore, the case law is clear that Rowe's mere assertion that he would have demanded a trial had he known of the lab report is insufficient to satisfy the prejudice prong of an ineffective assistance claim. *See Berkey*, 318 F.3d at 772–73 (collecting cases). Instead, he needed to show through objective evidence that "a reasonable probability exists that he would have gone to trial." *Id.* Given the lab report's limited usefulness, we do not think that it constitutes objective evidence that Rowe would have gone to trial had he known about it. Everyone involved in Rowe's original criminal proceeding–the officers who arrested him, the government's attorneys, the district judge, and Rowe himself–seemed to agree that the substance he possessed was crack, and the government could have easily proven that the substance was what everyone thought it was through more testing or the testimony of the officers who charged Rowe with possessing crack. *See United States*

*v. Parker,* 245 F.3d 974, 977 (7th Cir.2001) (holding that other evidence in the record proved substance was crack despite lab report not indicating that it was crack); *United States v. Saulter,* 60 F.3d 270, 278–79 (7th Cir.1995) (noting that court will not fault government for not anticipating "all possible arguments").

AFFIRMED.